**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | |
|---|---|
| ANDREEA IACOBETI<br><br>　Plaintiff,<br><br>　v.<br><br>GENNA LEIGH ROSE WEEKS<br><br>　Defendant. | Case Number:　1:23-CV-1758<br><br>Judge: Adam B Abelson |

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Andreea Iacobeti, by her attorney, William C. Hudson, opposes Defendant's Motion for Summary Judgment and, as grounds, states as follows:

**STANDARD OF REVIEW**

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. Anderson, 477 U.S. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. See Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the Court has drawn all reasonable inferences in favor of the nonmoving party and "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249–50 (citations omitted).

The party seeking summary judgment bears the initial burden of establishing either that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. Celotex Corp., 477 U.S. at 322–24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

Summary judgment is inappropriate if an issue depends upon credibility of witnesses, because credibility can best be determined only after trier of fact observes witnesses' demeanor. Generally, court looks with extreme caution at cases in which trial judge has removed a negligence determination from jury. Because of peculiarly elusive nature of concept of negligence, it is the rare personal injury case which may be properly disposed of by summary judgment; but that is not to say that where unusual case is encountered, a plaintiff must have his day in court even though there is nothing to be tried. Bland v. Norfolk & S. R. Co., C.A.4 (N.C.) 1969, 406 F.2d 863. Claims of negligence involve a reasonable person standard that is uniquely within the competence of the jury; consequently, summary judgment is rarely granted on the merits of a negligence action. Koran v. Weaver, D.Mass.2007, 482 F.Supp.2d 165. Summary judgment in negligence cases is especially difficult to obtain as jury's unique competence in applying reasonable man standard is thought ordinarily to preclude summary judgment in negligence cases. Bomboir v. National R.R. Passenger Corp., N.D.Ill.1995, 902 F.Supp. 160. Despite availability of summary judgment for negligence claims, it is very hard to show that there are no questions of material fact in negligence cases; in most cases, issue of whether conduct is negligent is factual determination, while question to be determined on summary judgment is whether there are factual issues to be tried. Spencer v. Cohen, N.D.N.Y.1995, 886 F.Supp. 235.

On motion for summary judgment, all justifiable inferences must be drawn in favor of nonmovant. (Per Justice Breyer, with two Justices and the Chief Justice concurring, and two Justices concurring in the judgment).  Beard v. Banks, U.S.2006, 126 S.Ct. 2572, 548 U.S. 521, 165 L.Ed.2d 697.  On appeal of grant of summary judgment, nonmovant's evidence is to be believed, and all justifiable inferences are to be drawn in its favor.  Eastman Kodak Co. v. Image Technical Services, Inc., U.S.Cal.1992, 112 S.Ct. 2072, 504 U.S. 451, 119 L.Ed.2d 265, on remand. While party not moving for summary judgment must provide more than merely conclusory allegations to defeat summary judgment, court should decide every reasonable inference in favor of party opposing the motion.  Burditt v. West American Ins. Co., C.A.5 (Tex.) 1996, 86 F.3d 475.  In ruling on motion for summary judgment, district court must view evidence in light most favorable to party opposing summary judgment and must draw all permissible inferences from submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party.  Gummo v. Village of Depew, N.Y., C.A.2 (N.Y.) 1996, 75 F.3d 98, certiorari denied 116 S.Ct. 1678, 517 U.S. 1190, 134 L.Ed.2d 780, on remand 1997 WL 311462.

## SUMMARY JUDGMENT STANDARD IS NOT MET

There exist genuine disputes of material fact and Defendant is not entitled to judgment as a matter of law. Although Defendant appears to make no mention of her in the Memorandum in Support of Motion for Summary Judgment, Elif Yilderal was also struck by Defendant in the accident but fortunately suffered no injuries. Based upon her account of the accident, as reflected in the affidavit she has provided, and the footage from the security camera, it should be clear that Defendant caused the accident by violating multiple Maryland traffic laws and failing to exercise due care. In addition, for the reasons set forth below, it should be equally clear that the interpretation of Md. Trans. Code Section 21-502(a) relied upon by Defendant is patently erroneous. For those reasons, Defendant is not entitled to summary judgment on the issue of her primary negligence.

Similarly, Ms. Yilderal's account of the accident, as reflected in the affidavit, and the footage from the security camera serve to undermine much of the Charles Beegle deposition testimony relied upon by Defendant in support of her contributory negligence defense and for that reason, Defendant also is not entitled to summary judgment on the issue of contributory negligence.

## MARYLAND NEGLIGENCE LAW AND APPLICABLE RULES OF THE ROAD

A claim for negligence under Maryland substantive law requires Plaintiff prove "1) that the defendant was under a duty to protect the plaintiff from injury, 2) that the defendant breached that duty, 3) that the plaintiff suffered actual injury or loss, and 4) that the loss or injury proximately resulted from the defendant's breach of that duty." Steamfitters Local Union No. 602 v. Erie Ins. Exch., 469 Md. 704, 727 (2020). "Drivers have a duty to exercise reasonable care for the sake of pedestrians and other motorists." Germain v. Norris, 536 F.Supp.2d 585, 588–89 (D. Md. 2008) (citing Ghirardello v. Malina, 238 Md. 498, 507 (1965)). See also Md. Code Ann., Transp. § 21-504(a) ("[T]he driver of a vehicle shall exercise due care to avoid colliding with any pedestrian."). While an accident and any resulting harm do not prove negligence on their own, see Ristaino v. Flannery, 317 Md. 452, 459 (1989), whether there is sufficient evidence to conclude that Defendant breached a duty is generally a question of fact for the fact finder. Wright v. Mohler, No. GJH-17-3012, 2019 WL 3817271 (D. Md. Aug. 14, 2019) (citations omitted); Valentine v. On Target, Inc., 353 Md. 544, 549 (1999).

Maryland law imposes on a driver a statutory duty to exercise due care to avoid colliding with any pedestrian. Reid v. Pegg, 256 Md. 289, 260 A.2d 38 (1969). A driver's duty is measured by the particular circumstances presented. Where a large number of people are present, or road conditions warrant, a greater duty to exercise caution is warranted. Greenbaum v. Costa, 137 Md. 524, 113 A. 79 (1921). The duty of a driver to stop and yield the right of way to pedestrians crossing in a marked crosswalk are set forth in Md. Trans. Code Section 21-502. A pedestrian's right of way at street crossings is not unlimited. Love v. Curry, 104 Md. App. 684,

657 A.2d 796, cert. denied, 340 Md. 214, 665 A.2d 1057 (1995); Brown v. Rogers, 19 Md. App. 562, 313 A.2d 547 (1974). If, however, the oncoming traffic is justifiably thought to be so far away as to permit safe crossing, the pedestrian may assume a right of way in crosswalks will be respected. Brown v. Rogers, supra. A pedestrian starting across an intersection with a favorable signal has the right to complete the trip, even if the light changes during the crossing. Caryl v. Balt. Transit Co., 190 Md. 162, 58 A.2d 239 (1948).

Defendant had a duty to exercise due care to avoid striking any pedestrian[1], to drive at an appropriate, reduced speed when any special danger exists as to pedestrians because of conditions[2], to maintain a proper lookout, to give full attention to the road conditions ahead of her, to keep her vehicle under proper control, to drive at a speed no greater than reasonable given the prevailing traffic, road and weather conditions[3], to slow down and proceed with caution in observance of a flashing yellow light[4], to yield the right-of-way to pedestrians in the marked crosswalk[5], to stop at the designated stop line for crossing pedestrians, to come to a stop when a pedestrian crossing the roadway in a crosswalk is on the half of the roadway on which her vehicle is traveling or approaching from an adjacent lane on the other half of the roadway[6] and to refrain from overtaking and passing vehicles stopped to let pedestrians cross the roadway at a marked crosswalk[7].

## AFFIDAVIT OF ELIF YILDERAL

Attached hereto as Exhibit A is an affidavit signed by Elif Yilderal. Ms. Yilderal was crossing the marked crosswalk at the same time as Plaintiff, but on a bicycle rather than on foot, and she too was struck by Defendant.

---

[1] Md. Trans. Code Section 21-504
[2] Md. Trans. Code Section 21-801(h)
[3] Md. Trans. Code Section 21-801
[4] Md. Trans. Code Section 21-204
[5] Md. Trans. Code Section 21-502
[6] Md. Trans. Code Section 21-502(a)(2)
[7] Md. Trans. Code Section 21-502(c)

The facts set forth by Ms. Yilderal in the affidavit are sufficient to establish negligence against Defendant. The statements of Ms. Yilderal in the affidavit serve to establish the following:

   a. The intersection is normally controlled by traffic lights and pedestrian crossing signals by which vehicular and pedestrian traffic alternately is directed to stop and permitted to proceed in alternating fashion.
   b. As she approached the intersection on her bicycle on the day of the accident, she observed the traffic lights and pedestrian crossing signals were not operable.
   c. As she waited on the northeast corner of the intersection for an opportunity to safely cross, Plaintiff also was waiting there for an opportunity to cross.
   d. Eventually, a northbound motorist stopped to permit them to cross.
   e. As the northbound vehicle stopped, Plaintiff began to cross in the marked crosswalk on the north side of the intersection and Ms. Yilderal followed behind her.
   f. As they approached the center of Philadelphia Avenue, the vehicles in the southbound left turn lane and southbound Lane 3 (the lane immediately adjacent to the left-turn lane) also stopped to permit them to complete their crossing.
   g. As they crossed in front of the vehicle stopped in Lane 3, Ms. Yilderal began to overtake Plaintiff.
   h. As Ms. Yilderal crossed, she did her best to keep a lookout for approaching vehicles but did not see any and, as such, she thought it was safe to complete the crossing.

    i. As she and Plaintiff were crossing Lane 2 (the middle "thru" lane) of southbound Philadelphia Avenue, a vehicle drove past the two stopped vehicles and directly into the marked crosswalk, striking the rear wheel of Ms. Yilderal's bicycle with the passenger-side front bumper and Plaintiff with the driver-side front bumper.

    j. As a result, Ms. Yilderal fell but was not injured.

    k. Plaintiff was knocked unconscious and appeared to suffer serious injuries.

    l. At all times during the crossing and until struck by that vehicle, Plaintiff and she were in the marked crosswalk on the north side of the intersection.

    m. Ms. Yilderal would have expected that as Defendant approached the intersection, she could have easily observed them crossing in the marked crosswalk, as well as the two vehicles ahead of her that had stopped to permit them to complete their crossing.

    n. While still waiting on the northeast corner for an opportunity to cross, Ms. Yilderal observed Plaintiff was talking with someone on her cell phone but she did not believe Plaintiff was still on the phone while they crossed.

    o. Instead, as they crossed, Plaintiff appeared to Ms. Yilderal to be attentive to where she was going and to walk in the crosswalk at a straight and steady pace in an effort to safely complete the crossing.

Based solely on the facts set forth in the Affidavit, a jury could and should conclude Defendant failed to exercise due care to avoid striking any pedestrian in violation of Md. Trans. Code Section 21-504, failed to drive at an appropriate, reduced speed when any special danger exists as to pedestrians because of conditions in violation of Md. Trans. Code Section 21-801(h), failed to maintain a proper lookout, failed to give full attention to the road conditions ahead of her, failed to keep the vehicle under proper control, drove at a speed greater than

reasonable given the prevailing traffic and road conditions in violation of Md. Trans. Code Section 21-801, failed to slow down and proceed with caution in observance of a flashing yellow light in violation of Md. Trans. Code Section 21-204, failed to yield the right-of-way to pedestrians in a marked crosswalk in violation of Md. Trans. Code Section 21-502, failed to come to a stop when a pedestrian crossing the roadway in a crosswalk is on the half of the roadway on which her vehicle is traveling or approaching from an adjacent lane on the other half of the roadway in violation of Md. Trans. Code Section 21-502(a)(2) and attempted to overtake and pass vehicles stopped to let pedestrians cross the roadway at a marked crosswalk in violation of Md. Trans. Code Section 21-502(c).

## THE SECURITY VIDEO FOOTAGE

In addition to the Affidavit, the security camera video which Defendant attached to her Motion as Exhibit F, although admittedly of poor quality, also contains evidence sufficient to establish negligence against Defendant. The video corroborates most of the statements contained in Ms. Yilderal's Affidavit. In addition, the video shows the following:

a. Plaintiff first started to cross when the timestamp displayed on the original video recording was approximately 12:12:08.

b. Defendant struck Plaintiff and Ms. Yilderal when the timestamp displayed on the original recording was approximately 12:12:22.

c. During the approximately 14 seconds that elapsed, Plaintiff crossed at a relatively steady and deliberate pace.

d. The southbound vehicle ahead of Defendant in the left turn lane and the two vehicles ahead of Defendant in the adjacent Lane 3 came to a gradual stop, presumably because they observed pedestrians crossing in the marked crosswalk and understood they were required by Maryland law to permit the pedestrians to complete their crossing.

    e. Defendant did not stop, but instead overtook the stopped vehicles and drove into the marked crosswalk, striking Plaintiff and Ms. Yilderal before bringing her vehicle to a stop.

    f. There were no structures, barriers or other objects in the narrow strip separating the northbound and southbound lanes that would have obstructed Defendant's view of the pedestrians as she approached the intersection.

The original video is approximately 45 minutes in length and the accident appears only in the far upper right of the frame, making it a bit challenging to watch. To assist the Court, Plaintiff submits as Exhibit B[8] a clip taken from the video which shows only the critical 30 or so seconds and expands and re-centers the frame so as to make it easier for the viewer to appreciate what happened.

## ARGUMENT

Based solely on the affidavit of Ms. Yilderal and/or the video, a jury could reasonably conclude Defendant breached the general duty of care of any driver to exercise reasonable care to avoid causing harm to a pedestrian and also breached multiple statutory duties of care under Maryland law.

In support of her Motion, Defendant relies upon self-serving statements she made at her deposition to the effect that she "*slowed in response to the flashing yellow lights and approached the Intersection and Crosswalk with caution*" and "*was paying full attention to the roadway and traffic conditions prior to, and at the time of, the subject accident*." (Defendant's Memorandum, at p. 8).[9] She argues her testimony is further supported by Charles Beegle (who

---

[8] Plaintiff's Exhibit B will be submitted, via First Class mail, to the Chambers of the Honorable Adam Abelson, as counsel is unable to upload the referenced video through the Court's electronic filing system.
[9] Defendant also submitted in support of her Motion the accident report prepared by the responding officer. However, as the officer did not witness the accident, did not interview Plaintiff or Ms. Yilderal and apparently based his narrative on hearsay statements made by Defendant and Mr. Beegle, most of the narrative and any attributions of fault contained in his report should be inadmissible.

apparently was crossing at the time of the accident, but in the marked crosswalk on the south side of the intersection) who, according to Defendant, "*testified that he did not observe Defendant speeding or operating her vehicle in any concerning manner as she approached the Intersection.*" (Defendant's Memorandum, at p. 9).

However, it bears noting that although Beegle did testify he did not think Defendant was speeding, he also testified she appeared to be "*going the speed limit*" (Defendant's Exhibit D, at p. 28, lines 4-9), which would at least suggest that Defendant may not have slowed in response to the flashing yellow lights and may not have approached the intersection and crosswalk with appropriate caution.

Beyond those generalities, Defendant does not and cannot refute the fact that even though it was broad daylight, even though the flashing yellow light commanded her to proceed with caution, even though Plaintiff and Ms. Yilderal were in a marked crosswalk on the half of the roadway on which Defendant was traveling or were approaching it from an adjacent lane on the other half of the roadway, even though they were approximately 14 seconds into their crossing, even though the vehicles ahead of her had stopped to permit them to complete their crossing, Defendant failed to see what was plainly there to be seen and failed to stop as required by Md. Trans. Code Section 21-502(a)(2) and Md. Trans. Code Section 21-502(c).

Defendant instead argues "*Plaintiff cannot rely on a violation of Md. Trans. Code Section 21-502(a) to establish Defendant's negligence, as Section 21-502(a) clearly states that* "*this subsection does not apply where a traffic control signal is in operation*"". (Defendant's Memorandum, at p. 9)

Defendant's argument simply ignores Md. Trans. Code Section 11-168, which defines "Traffic control signal" *as "any traffic control device, whether manually, electrically, or mechanically operated, by which traffic alternately is directed to stop and permitted to proceed."* While it is true that the signals that normally controlled the intersection met the statutory definition of "traffic control device", it is undisputed that those signals were not in operation at

the time of the accident and that instead the traffic lights for Philadelphia Avenue were flashing yellow and the traffic lights for 17th were flashing red. Accordingly, at the time, traffic was not alternately directed to stop and permitted to proceed by the lights and therefore the flashing lights do not meet the statutory definition of "traffic control device". As a result, the dictates of Md. Trans. Code Section 21-502(a)(2) and 21-502(c) apply and can be relied upon by Plaintiff to establish Defendant's negligence.

Defendant also argues "Plaintiff alone violated Md. Trans. Code Section 21-502". (Defendant's Memorandum, at p. 9). More specifically, Defendant references Md. Trans. Code Section 21-502(b), which reads "*A pedestrian may not suddenly leave a curb or place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield.*"

However, as set forth above, the Affidavit and video clearly show that Plaintiff and Ms. Yilderal did not leave the curb on the northeast corner of the intersection until the northbound vehicle stopped to permit them to cross, that when they left the safety of the curb Defendant was not so close that it was impossible for her to yield, that they proceeded across at a steady and deliberate pace, that the southbound motorists in the left turn and adjacent Lane 3 observed them crossing and properly stopped to permit them to complete their crossing and that approximately 14 seconds elapsed from the time they left the safety of the curb to the time Defendant struck them.

There is no evidence to suggest that Plaintiff "darted" out in front of Defendant or that she at any time ran or that any of her movements were sudden. Instead, as the Affidavit and video show, once leaving the safety of the curb on the northeast corner of the intersection, she walked with a steady and deliberate pace.

Defendant also argues Plaintiff cannot establish that Defendant violated Md. Trans. Code Section 21-502(c) because Defendant "*did not overtake or pass any car stopped at the*

*intersection*" and she claims "*This is confirmed by the Video relied on by Plaintiff, as well as the deposition testimony of Defendant*". (Defendant's Memorandum, at p. 10).

However, the Affidavit of Ms. Yilderal states otherwise. Moreover, a careful, fair and focused viewing of the video clearly shows that Defendant did, in fact, overtake the stopped southbound cars in the left turn and Lane 3 and had partially passed them when she struck Plaintiff and Ms. Yilderal in the marked crosswalk.

Lastly, Defendant argues Plaintiff is contributorily negligent as a matter of law and, in support, relies primarily upon the deposition testimony of Mr. Beegle, which Defendant summarizes as follows: "*Plaintiff was looking down at her phone when she entered the Crosswalk heading westbound. She proceeded through the northbound lanes, past the center median, through the southbound lanes, and directly in front of Defendant's vehicle without ever pausing or looking for approaching vehicles.*" (Defendant's Memorandum, at p. 12-13)

For present purposes, Plaintiff will not dispute the accuracy of Defendant's summary of Mr. Beegle's testimony. However, Mr. Beegle's testimony is unreliable in a number of respects, as follows:

   a. The video shows Plaintiff and Ms. Yilderal left the safety of the curb on the northeast corner of the intersection and entered the crosswalk only after the northbound vehicle stopped.

   b. The video shows Plaintiff and Ms. Yilderal crossed in front of the vehicle in the southbound left turn lane only after it stopped.

   c. The video shows Plaintiff and Ms. Yilderal crossed in front of the vehicle in the southbound Lane 3 only after it stopped.

   d. Although Mr. Beegle claims to have observed that Plaintiff never bothered to look for approaching traffic, at the time he was supposedly making his observations, he and his young son were themselves attempting to safely

      cross Philadelphia Avenue and, as such, it is extremely difficult to believe Plaintiff was the subject of his full and undivided attention.

  e. As shown in the video, for a period of several seconds during which Plaintiff approached the center median, two vehicles that passed in between Mr. Beegle and Plaintiff would have obstructed his view of Plaintiff.

  f. As shown in the video, he and his son crossed a few seconds behind Plaintiff and, from that vantage point, it is difficult to believe he would have been able to discern where Plaintiff's eyes were looking at any given time during the crossing.

  g. On at least several key facts, the video unequivocally refutes Mr. Beegle's deposition and demonstrates his testimony is unreliable, as he testified that no vehicles were stopped in Lane 3 even though the video clearly shows that not one, but two vehicles were stopped there, that Defendant struck Plaintiff in Lane 3 when the video clearly shows that Defendant struck Plaintiff in Lane 2 and that Plaintiff was crossing alone and was the only person Defendant struck even though the video clearly shows Ms. Yilderal also was crossing and also was struck by Defendant.

Because of the demonstrable unreliability of Mr. Beegle's testimony on those issues, a reasonable jury could and should choose to ignore it. Much of his testimony also is refuted by the Affidavit of Ms. Yilderal and she arguably had a more uninterrupted opportunity to observe Plaintiff and a better vantage point from which to do so.

Based on those observations and as set forth in the Affidavit, she insists that while Plaintiff had been talking on her phone while waiting to cross, she was not still on the phone while they crossed, that Plaintiff appeared to be attentive to where she was going and to walk in the crosswalk at a straight and steady pace in an effort to safely complete the crossing, that Ms.

Yilderal herself did her best to keep a good lookout for approaching vehicles but did not see any and, as such, she too thought it was safe to complete the crossing and that she would have expected that as Defendant approached the intersection, she could have easily seen Ms. Yilderal and Plaintiff crossing in the marked crosswalk and also the two vehicles that had stopped ahead of her to permit them to complete their crossing.

## CONCLUSION

For the reasons set forth above, there are genuine disputes of material fact. Plaintiff's Opposition to Defendant's Motion for Summary Judgment sets forth facts supported by affidavit and video that would be admissible in evidence and sufficient to carry the burden of proof required to establish the negligence of Defendant and sufficient to withstand the defense of contributory negligence. As such, Defendant is not entitled to judgment as a matter of law and her Motion for Summary Judgment should be denied.

Respectfully submitted,

*/s/ William C. Hudson, Esquire*
William C. Hudson, Esquire
Federal Bar No. 07845
9748 Stephen Decatur Highway, Ste 111
Ocean City, MD 21842
(410)390-7745
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 7th day of February 2024, the foregoing Opposition to Motion for Summary Judgment was filed and served via the Court's CM/ECF system on Anne K. Howard, Esquire, and David H. Fleishman, Esquire, Twinbrook Metro Plaza, 12300 Twinbrook Parkway, Suite 540, Rockville, Maryland 20852, counsel for Defendant Genna Leigh Rose Weeks.

*/s/ William C. Hudson, Esquire*
*Counsel for Plaintiff*