**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND NORTHERN DIVISION**

| | |
|---|---|
| ANDREEA IACOBETI<br><br>Plaintiff,<br><br>v.<br><br>GENNA LEIGH ROSE WEEKS<br><br>Defendant. | Case Number:   1:23-CV-1758<br><br>**Judge:** Adam B. Abelson |

### DEFENDANT'S REPLY MEMORANDUM TO PLAINTIFF'S OPPOSITION

COMES NOW Defendant, Genna Weeks, by and through her attorneys, Anne K. Howard, Esquire and David Fleishman, Esquire, and respectfully submits this Reply in response to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opposition").

Plaintiff's Opposition relies solely on: (1) the Video, (2) an Affidavit of Elif Yilderal (the "Affidavit")[1], (3) attacking deposition testimony of Defendant and independent witness, Charles Beegle, on ancillary issues, and (4) Plaintiff's counsel's own speculation and conjecture to support Plaintiff's assertion that a genuine issue of material fact exists in the instant case as to Defendant's negligence and Plaintiff's contributory negligence.

The video and the Affidavit relied upon by Plaintiff amount to, at best, the "mere existence of a scintilla of evidence" in support of Plaintiff's allegations, which is insufficient to preclude the granting of summary judgment in Defendant's favor. *Beatty v. Trailmaster*

---

[1] Defendant has filed a Motion to Strike the Affidavit of Elif Yilderal simultaneously with this Reply. Defendant incorporates in this Reply all arguments set forth in Defendant's Motion to Strike Affidavit of Elif Yilderal and contends that the assertions contained in the Affidavit of Elif Yilderal should not be considered by this Honorable Court in ruling on Defendant's Motion for Summary Judgment. Additionally, it should be noted that the information contained in the Affidavit had not been provided to defense counsel in discovery, and Mr. Yilderal was never deposed. The Discovery Deadline in this case was December 11, 2023.

*Prods., Inc.*, 330 Md. 726, 738 (1993). Moreover, mere disagreement with the testimony of a party does not provide a sufficient basis for a dispute of material fact. Benway v. Md. Port Admin., 191 Md. App. 22, 46 (2010).

To overcome summary judgment, Plaintiff must set forward evidence upon which the jury could reasonably find for Plaintiff. Id. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations . . . or other materials; or (B) showing that the material cited to not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> Fed. R. Civ. P. 56(c)(1).

For the reasons set forth in Defendant's Motion for Summary Judgment, and this Reply, Plaintiff has failed to set forth evidence sufficient to carry the burden of proof necessary to establish a Negligence and/or Gross Negligence cause of action against Defendant, or that Plaintiff was not contributorily negligent as a matter of law.

**(1) Plaintiff has failed to produce sufficient admissible evidence to establish a dispute of material fact exists as to whether Defendant negligently operated her vehicle on July 26, 2022.**

    a. Plaintiff has failed to produce sufficient admissible evidence to support her contention that Defendant violated Md. Trans. Code laws on July 26, 2022.

Neither the video nor the Affidavit relied upon by Plaintiff is sufficient to create an issue of material fact as to whether Defendant violated any of the traffic laws alleged by Plaintiff.[2]

---

[2] Plaintiff's Opposition contends Defendant violated Md. Transp. Code §§ 21-204, 21-502, 21-502(a)(2), 21-502(c), 21-504, 21-801, and 21-801(h). (Plaintiff's Opposition, at pp. 4-5).

i. *The Video*

Plaintiff boldly asserts the following as fact, based on grainy video footage of the incident:

(1) [Over the span of 14 seconds] Plaintiff crossed the intersection at a relatively steady and deliberate pace;

(2) The southbound vehicle ahead of Defendant in the left turn lane and the two vehicles ahead of Defendant in the adjacent Lane 3 *came to a gradual stop, presumably because they observed pedestrians cross in the marked crosswalk and understood they were required by Maryland law to permit the pedestrians to complete their crossing*; and

(3) There were no structures, barriers or other objects in the narrow strip separating the northbound and southbound lanes that would have obstructed Defendant's view of the pedestrians as she approached the intersection.

(Plaintiff's Opposition, at pp. 8-9)(emphasis added).

Not only is it nearly impossible to make out what is occurring in the poor-quality video Plaintiff relies upon, but Plaintiff has provided no competent evidence which could be admissible at trial to support the above-stated presumptions and assertions, including no accident reconstructionist and no experts. Plaintiff also has not produced any witnesses who can attest to the intent of the referenced drivers, speed of the referenced vehicles, or whether a driver in the position where Defendant's vehicle was would have been visually obstructed from observing the pedestrians (other than one witness whose affidavit should not be considered by this Honorable Court as it is riddled with the same sort of speculative and conclusory statements as Plaintiff's Opposition). There simply isn't sufficient evidence, without more, to support Plaintiff's speculative conclusions from the video.

Conversely, Defendant has provided competent admissible evidence, in the form

3

of deposition testimony from Defendant and independent witness Charles Beegle, which supports Defendant's position that she observed the flashing yellow lights, slowed her vehicle down, approached the intersection with caution, and was obstructed from seeing Plaintiff until Plaintiff suddenly appeared in front of Defendant's vehicle, after emerging from the front of the stopped vehicle to Defendant's left. Exhibit C, at pp. 21, 45, 54, 57; Exhibit D, p. 59, lns. 16-21; p. 62, lns. 11-13; Exhibit E, pp. 25-26.[3]

At best, the video supports a finding that Plaintiff was the sole negligent party in this case. At worst, the video does nothing to advance Plaintiff's theory of Defendant's negligence beyond mere conjecture and speculation.

ii. *Deposition Testimony*

Plaintiff's failure to provide competent evidence to support her allegations of negligence against Defendant is further evident as Plaintiff resorts to attacking the credibility of Defendant and Charles Beegle. Plaintiff does this by essentially asking this Honorable Court to disregard Defendant's testimony as it is "self-serving" and nitpicking Mr. Beegle's deposition testimony, without additional context.

Attacking Defendant's credibility by simply calling her testimony "self-serving" is not sufficient grounds to overcome summary judgment.[4] This is especially true when Plaintiff has produced no competent admissible evidence to contradict Plaintiff's testimony as to the key material facts in this case, *i.e.* that she recognized the flashing

---

[3] Exhibits C, D, E, correlate to the exhibits previously attached to Defendant's Motion for Summary Judgment.

[4] See Benway v. Md. Port Admin., 191 Md.App.22, 46 (2010)(holding that a mere disagreement with the testimony of a party does not provide a sufficient basis for a dispute of material fact); see also McMichael v. James Island Charter Sch., 840 F. App'x 723, 731 (4th Cir. 2020)(holding "litigants can't avoid summary judgment by merely calling into question the credibility of witnesses testifying against them—they must introduce some affirmative evidence that creates a genuine factual dispute").

4

yellow lights, slowed her vehicle, and proceeded towards the intersection with caution in accordance with all Maryland traffic laws. (<u>Defendant's Motion for Summary Judgment</u>, at 8-9). Under Plaintiff's "self-serving" testimony theory, no Defendant testifying in their own defense would ever be considered credible unless they were to testify negatively against themselves.

As to Mr. Beegle, Plaintiff cites to his testimony that Defendant "appeared to be going the speed limit" as a way to speculate "Defendant *may not* have slowed in response to the flashing yellow lights and *may not* have approached the intersection and crosswalk with appropriate caution." (<u>Plaintiff's Opposition</u>, at pp. 9-10)(emphasis added).

However, Mr. Beegle clarified his testimony as to Defendant's speed multiple times throughout his deposition, stating the following:

> As soon as she [Defendant] hit the pedestrian she stopped immediately. I didn't hear tires screeching or anything. It -- it seemed like it was she hit and the car stopped at the same time.
>
> (<u>Defendant's Reply - Exhibit 1</u>, *Excerpts from witness Charles Beegle's deposition testimony not included in Defendant's Exhibit D*, at p. 63, lns. 8-11).
>
> Now, I am not sure what the speed limit is. So *she couldn't have been going that fast* is why I am saying that because as soon as she hit that lady she come to an instant stop.
>
> <u>Id.</u> at p. 72, lns. 6-9. (Emphasis added).

Mr. Beegle further clarified his testimony in the following exchange:

> **Q:** What do you believe the speed limit was?
> **A:** . . . I think it was 35 or 45 but I still could be wrong. I don't know.
> **Q:** Okay. And would you agree with me if she was going 35 at the time of the impact the car wouldn't have just been able to stop?
> **A:** Right. Correct.
> **Q:** All right. So she had -- you would --it would make sense that she was

5

>probably going less than that at the time?
>**A:** Yes.

Id. at p. 72, lns. 14-22; p. 73, ln. 1.

While Mr. Beegle may not have been able to estimate Defendant's exact speed, it is clear from his testimony she was traveling at a reduced speed. This testimony from Mr. Beegle was never impeached by Plaintiff and undoubtedly supports Defendant's testimony that she was operating her vehicle slowly and with caution, comporting with all necessary traffic laws, as she approached the intersection.

### iii. *The Affidavit*

An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated. Fed. R. Civ. P. R. 56(c)(4). A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. Civ. P. R. 56(c)(2).

The Affidavit provided in support of Plaintiff's Opposition should not be considered in ruling on summary judgment for the reasons set forth in Defendant's Motion to Strike. However, even if the Affidavit were considered, the Affidavit provides no factually sound observations to dispute Defendant and Mr. Beegle's deposition testimony on the key issues in this case. (Affidavit of Elif Yilderal, *see generally*). Instead, the Affidavit is riddled with qualifying statements which show they are not facts based upon personal knowledge, nor facts which would be admissible in evidence at trial. Id.

Even if all of the information contained in the Affidavit was considered by this Honorable Court, Mr. Yilderal states in the Affidavit that he overtook Plaintiff, on his bicycle, as they crossed in front of the vehicle stopped in Philadelphia Avenue

Southbound Lane 3. Id. at ¶ 8. This would have occurred prior to the collision with Plaintiff and, thus, Mr. Yilderal could not have observed Plaintiff or Defendant at the moments leading up to, or at the time of, the subject incident.

Plaintiff also relies on Mr. Yilderal's assertion that he did not see Defendant's vehicle approaching as he proceeded into the intersection, even though he did "his best to keep a lookout for approaching vehicles," to conclude Defendant must have been speeding or not approaching the intersection with caution. (Affidavit of Elif Yilderal, at ¶ 9).

However, there is no information in the Affidavit as to what doing "his best to keep a lookout for approaching vehicles" entailed. Thus, this Honorable Court is asked by Plaintiff to blindly infer that the steps Mr. Yilderal took to look for oncoming traffic, prior to him and Plaintiff proceeding directly in front of Defendant's vehicle, were sufficient to show Defendant did not use due care while approaching the intersection. This vaguery is simply another reason why the Affidavit is unreliable and insufficient in establishing the necessary threshold for Plaintiff to overcome summary judgment. To the contrary, Defendant has produced ample evidence that she did proceed with caution and did use due care when she approached the intersection on July 26, 2022.

For these reasons, and the reasons set forth in Defendant's Motion for Summary Judgment, there is simply insufficient admissible evidence produced by Plaintiff to contradict the evidence set forth by Defendant as to the adequate due care Defendant took as she proceeded towards the intersection. At best, Plaintiff has not established more than a "mere scintilla" of evidence to support her claims, which is insufficient to overcome summary judgment.

   b. Md. Trans. Code § 21-502 does not apply to this case.

Plaintiff cannot rely on a violation of Md. Trans. Code § 21-502 to establish Defendant's negligence, as § 21-502(a) clearly states that "this subsection does not apply where a traffic control signal is in operation." § 21-502(a). While there is no dispute that the traffic control signals controlling northbound and southbound traffic were not operating as normal, there is also no dispute that they were, in fact, operating. The lights controlling Defendant's approach of the intersection were flashing yellow, allowing Defendant, pursuant to Maryland law, to proceed with caution through the intersection without stopping. Md. Transp. Code § 21-204(f).

Plaintiff asserts in Plaintiff's Opposition that § 21-502 clearly applies to this case as the flashing yellow lights are not "traffic control signals." (Plaintiff's Opposition, at p. 10). In support, Plaintiff cites to Md. Transp. Code § 11-168 which defines a traffic control signal as "any traffic control devise, whether manually, electrically, or mechanically operated, by which traffic alternately is directed to stop and permitted to proceed." § 11-168.

While Plaintiff cites to the definition of a "traffic control signal" correctly, it is clear that the Md. Transp. Code intended for flashing signals to be included as "traffic control signals." This is evident as the rule which dictates how a driver should proceed on a flashing yellow light (Md. Transp. Code § 21-204(f)), is contained within Md. Transp. Code Subtitle 2, which contains the laws for "Traffic Signs, Signals, and Markings." Moreover, the title of Md. Transp. Code § 21-204, is "Flashing signals." Md. Transp. Code § 21-204. In fact, the section begins with "if a flashing red or yellow light is used *in a traffic signal*, it requires obedience by vehicular traffic as provided in this section." § 21-204(a).

8

Even if this Honorable Court were to determine § 21-502 does apply to the subject incident, for the reasons set forth in Defendant's Motion for Summary Judgment and this Reply to Plaintiff's Opposition, Plaintiff has failed to produce sufficient admissible evidence to create an issue of material fact that Defendant violated any part of the statute.

**(2) There is no genuine issue of material fact as to whether Plaintiff was contributorily negligent as a matter of law.**

Defendant, citing to Plaintiff's testimony, the testimony of independent witness Charles Beegle, and the video heavily relied on by Plaintiff, clearly established that Plaintiff was negligent as a matter of law when, departing a position of safety, she stepped into the traveled portion of the roadway without looking for oncoming vehicles, at a time when the traffic control lights around her were malfunctioning, and the pedestrian walk signal was not functioning at all. In response, Plaintiff attacks ancillary aspects of Mr. Beegle's testimony and cites to the Affidavit. Neither, however, provides evidence to create a genuine issue of fact on the issue of contributory negligence.

Plaintiff posits the testimony of Mr. Beegle should not be considered in evaluating summary judgment, although Plaintiff does not ever refute the key portions of Mr. Beegle's testimony. Instead, Plaintiff speculates about Mr. Beegle's vantage point and other conjectures about the accuracy of his testimony. This is not a proper basis to defeat summary judgment. McMichael v. James Island Charter Sch., 840 F. App'x 723, 731 (4th Cir. 2020) (stating "litigants can't avoid summary judgment by merely calling into question the credibility of witnesses testifying against them—they must introduce some affirmative evidence that creates a genuine factual dispute").

Furthermore, even if the Affidavit were to be considered by this Honorable Court, the Affidavit does not provide the affirmative evidence necessary to create a genuine

issue of material fact as to whether Plaintiff was contributorily negligent. Independent witness Charles Beegle's testimony that Plaintiff walked from the northbound side of the intersection, across the center median, into the southbound lanes without pausing and without ever looking for approaching vehicles is undisputed. Exhibit D, at pp. 18-19, 31. It is also undisputed that Mr. Beegle was present at the location of the incident and observed the incident "plain as day." Id. at p. 31.

Mr. Yilderal agrees that Plaintiff was on her phone at least immediately before entering the intersection. (Affidavit of Elif Yilderal, at ¶ 15). He then conveniently "believes" she was not still on the phone when they crossed the intersection, an assertion which cannot be relied upon as a fact in determining summary judgment, as it is clearly speculative and not based on personal knowledge. Fed. R. Civ. P. 56(c)(4); (Affidavit of Elif Yilderal, at ¶ 15). Mr. Yilderal also makes no contention as to whether Plaintiff looked for approaching vehicles while crossing the intersection, other than "she appeared to be attentive to where she was going" without any further information as to what "appearing to be attentive" means. (Affidavit of Elif Yilderal, at ¶ 16). Finally, Mr. Yilderal seems to agree that Plaintiff proceeded through the intersection without ever stopping at the center median, as she "walked in the crosswalk at a straight and steady pace." (Affidavit of Elif Yilderal, at ¶ 16).

Both Plaintiff's failure to pause at the center median, a place of safety, and Plaintiff's failure to lift her head up for even for a second to look for approaching vehicles as she proceeded across the southbound traffic lanes, all while the pedestrian control signal was not operational and the traffic lights were malfunctioning, can independently

support a determination that Plaintiff was contributorily negligent as a matter of law. See Reid v. Pegg, 256 Md. 289, 294 (1969).

WHEREFORE, for the reasons stated above, and the reasons set forth in Defendant's Motion for Summary Judgment, Defendant respectfully requests that Summary Judgment be granted in her favor.

Respectfully submitted,

**BUDOW AND NOBLE, P.C.**

_____/s/_____
Anne K. Howard, Esquire, Bar No.: 04729
David H. Fleishman, Esquire, Bar No.: 30607
Twinbrook Metro Plaza
12300 Twinbrook Parkway, Suite 540
Rockville, Maryland 20852
T: (301) 654-0896
F: (301) 907-9591 facsimile
ahoward@budownoble.com
dfleishman@budownoble.com
*Counsel for Defendant, Genna Weeks*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 21st day of February, 2024, the foregoing Memorandum in Support of Defendant's Motion for Summary Judgment was filed and served via the Court's CM/ECF system on:

William C. Hudson, Esquire
Law Office of William C. Hudson
9748 Stephen Decatur Highway, Suite 111
Ocean City, Maryland 21842
*Attorney for Plaintiff, Andreea Iacobeti*

_____/s/_____
Anne K. Howard, Esquire, Bar No.: 04729
David H. Fleishman, Esquire, Bar No.: 30607
*Counsel for Defendant, Genna Weeks*