EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND NORTHERN DIVISION

| | |
|---|---|
| ANDREEA IACOBETI<br><br>Plaintiff,<br><br>v.<br><br>GENNA LEIGH ROSE WEEKS<br><br>Defendant. | Case Number:   1:23-CV-1758<br><br>Judge: Adam B Abelson |

## AFFIDAVIT OF KEVIN WERTLIEB

1. I, Kevin Wertlieb, was an eyewitness to the accident that happened at the intersection of Philadelphia Avenue and 17th Street in Ocean City on July 26, 2022 around noon.

2. At the time of the accident, I was driving a vehicle southbound on Philadelphia Avenue in Lane 3 (the lane immediately adjacent to the left-turn lane).

3. My friend, Jacob Ginsberg, was a passenger in the front-seat and our children were in the vehicle with us as well.

4. Another friend, Leo Gueriguian, was driving the vehicle ahead of us and his children were in the vehicle with him.

5. The intersection was controlled by traffic lights and pedestrian crossing signals.

6. On the day of the accident, the traffic light controlling southbound traffic on Philadelphia Avenue was flashing its yellow light.

7. As we approached the intersection and slowed to a stop, Leo came to a complete stop before the marked crosswalk.

8. Once stopped behind Leo, I observed a pedestrian and a cyclist crossing Philadelphia Avenue in the marked crosswalk from east to west (from our left to our right).

9. I also observed that there was a vehicle in the southbound left-turn lane (to our left) that stopped next to Leo before the marked crosswalk.

10. From my perspective, all three vehicles stopped in a gradual, controlled manner, as the drivers of each of the three vehicles were each slowing for the yellow flashing light and, in doing so, had no difficulty being able to see the pedestrian and cyclist in the crosswalk.

11. As the pedestrian and cyclist were crossing in front of the vehicle in the left-turn lane and the vehicle driven by Leo Gueriguian, I saw a sports utility vehicle in Lane 2 (the lane immediately to our right) pass our vehicle.

12. I did not observe that the sports utility was speeding, but the driver did not appear to slow down as it passed our vehicle toward the crosswalk and blinking yellow light.

13. As the sports utility vehicle passed our vehicle, I could see that the cyclist was slightly ahead of the pedestrian and anticipating a collision, I said "**Oh, no, no, no, no!**".

14. The sports utility vehicle then passed the vehicle of Leo Gueriguian and drove into the marked crosswalk.

15. In the marked crosswalk, I saw the cyclist notice the sports utility vehicle not slowing down and immediately sped up her pace to avoid being struck.

16. I then witnessed the passenger side front bumper of the sports utility vehicle strike the rear wheel of the cyclist's bicycle and the driver side front bumper of the sports utility vehicle strike the pedestrian. The cyclist was able to continue on her way.

17. As a result of the impact, the pedestrian was thrown a good distance into the intersection where she landed on the asphalt, appearing not to move. She was immediately attended to by onlookers, and I called 911 to report the incident.

18. At all times during the crossing and until struck by the sports utility vehicle, the pedestrian and cyclist appeared to me to be in the marked crosswalk and to be moving at a steady and deliberate pace.

19. Neither the pedestrian nor the cyclist darted out into traffic or did anything I would consider to be sudden, erratic or unpredictable.

20. From my perspective, an attentive driver approaching the intersection and keeping a proper lookout could have seen the flashing yellow light and the southbound vehicles stopped behind the crosswalk.

21. Based thereon, I believe the driver of the sports utility in Lane 2 was at fault for failing to proceed with caution when a yellow flashing light was displayed with other vehicles stopped at a marked crosswalk for pedestrians, and therefore failed to yield to a pedestrian and cyclist crossing in a marked crosswalk.

22. I do not know any of the parties involved in the incident.

23. After the accident, Leo Gueriguian informed an officer who arrived at the scene that he witnessed the accident and provided the officer with his contact information.

24. We remained at the scene for approximately 15 minutes.

25. After we left the scene, we were never contacted or interviewed by any officers or otherwise given an opportunity to provide our account of the accident until now.

26. I declare under penalty of perjury that the foregoing is true and correct and based on my personal knowledge.

Executed on this 2 day of April, 2024.

_____
Kevin Wertlieb